Good morning your honors, Walt Cannon on behalf of the appellate A serious Nevada name I'm sorry Cannon It is to a certain extent, although no relation to Howard Cannon Okay I represent Sheriff Bill Young who in this case has been accused and actually found, at least on a question of fact to have committed a tort of First Amendment retaliation I think the record is clear in this case that indeed the only thing Sheriff Young did was engage in speech himself that was protected The two instances cited by the court below to substantiate something other than speech as you'll recall, occurred on October 15th and again on October 26th On October 15th, a statement was released to the press that Ms. Mazzeo had made certain statements The court in its order below said one of the statements was that Ms. Mazzeo had specifically, or that Sheriff Young had specifically said that Ms. Mazzeo's complaint that she had withdrawn occurred as a result of a misunderstanding caused by her consumption of alcohol Now, Judge Hunt in his order cited to different language It's important to remember though that Judge Hunt in his order cited to only one of four statements that Ms. Mazzeo gave This is an interlocutory appeal, correct addressed simply to the denial of qualified immunity for your client It absolutely is But how do we separate Judge Hunt's refusal to grant summary judgment concluding that there were material disputed fact questions as to her First Amendment allegation which includes charges of conspiracy which put these statements made by your client publicly kind of in a different light, don't they? In other words, how do we disassociate the fact that Judge Hunt says I can't, on the facts presented to me enter summary judgment for one side or the other on this claim that there was a conspiracy between Sheriff Young the political operative, his political ally, Jim Gibbons and the statements that were made including the statement telling the public that this was that they ought to ignore this when they go to the polls and decide who to vote for for Governor How do we separate those two? Okay, well, Judge Hunt did that in his order, didn't he? Didn't he say there were two claims that he dealt with? One was the First Amendment claim. The second was the conspiracy claim. He handled them in reverse order to that, but that's what he did. And we're saying, and let me address the conspiracy claim because he brought that up first. What was the meeting of the minds, according to Judge Hunt, in this case? It was to minimize political fallout, as you point out. That's the allegation. We understand that's the allegation. Is that a constitutional tort without putting in something? That was Judge Hunt's conclusion, that indeed the conspiracy or the meeting of the minds was predicated exclusively upon the act of attempting to minimize fallout. To use the baseball analogy, you're at about the sixth inning, and I'm back at the first inning. And the first inning is, and here's my direct question, to provide your client relief on this interlocutory appeal on qualified immunity. Don't we have to overrule Judge Hunt's refusal to grant summary judgment? Yes. What you have to do. Well, if the answer to that question is yes, how in the world does this get involved in an interlocutory appeal? It's not a factual question. Our position here is Judge Hunt made a mistake on the law based on the facts that were before him. But this is why I'm in the first inning, counsel. Okay. The summary judgment issue is not before us. No. The only thing that's before us is qualified immunity. Exactly. You would like us to look at these two or three public statements which, if you can to public statements. But we have this refusal to grant summary judgment and the knowledge that there apparently is going to be a factual trial on whether there was a conspiracy. Okay. All right. Well, then, we appealed on two bases, didn't we? And qualified immunity, you've got to show both. You're here on an interlocutory appeal under a Federal statute that limits our inquiry as to whether your client was entitled to qualified immunity or not. Exactly. The summary judgment is not before us. We can't approve it, disapprove it, or affect it in any way. But we can't be ignorant of the fact that Judge Hunt said, I can't resolve the conspiracy issue. Tell us how we have jurisdiction in the context of an interlocutory appeal to deal with your client's claim. My thought on that, and possibly wrong, is that I believe that you can't. I want you to dissuade me. I'm going to attempt to. Thank you for that. My position on that would be that Judge Hunt has made a determination on two bases. Number one, on the conspiracy, okay, applying the law inappropriately. If he does that, I can come up here, can I not, to show a constitutional tort doesn't exist, and therefore, I don't even have to get to the second prong of the test. You have a case that says that? Well, the first isn't the one. A Ninth Circuit or Supreme Court case that says in the context of an interlocutory appeal, coming from the denial of qualified immunity, I can ask the panel to go back and look at other rulings by the judge which may or may not relate to qualified immunity. Well, indeed, they did relate to qualified immunity, didn't they? He made that in the context of the order. That's the only basis I have for that summary judgment. And this argument would make perfect sense if we were at the end of the trial. This were not an interlocutory appeal, and you were here after an adverse jury verdict or the denial of post-evidence kind of thing, but we're here on an interlocutory appeal. I understand the Court's position. Tell me how I get out of that box. Well, again, my position would be, and my argument indeed was, I believe in the briefs, that we are here with the first question of qualified immunity, which was, was there a constitutional tort? Isn't that you can review that? Well, if I understand your position, it is that there was that a reasonable person would not, in your client's position, would not think that what was alleged violated anybody's constitutional rights. I think that's clear. Yes, absolutely. Well, why wouldn't they think that if the purpose of this was to minimize the political fallout, meaning to keep her from saying anything more, and to make the situation get – keep it from getting worse, that they weren't interfering with her constitutional rights? Why wouldn't they? Well, Sheriff Young was not involved in anything. There's nothing cited in this Court at all that shows that he did anything except make two public statements. That's it. That's all he did. But don't we have to assume that the facts alleged in the complaint, taken together with the judge's determination that he can't enter judgment at this time factually, don't we have to accept that as true? Yes. But if we accept it as true, then I'm sure what the plaintiff's lawyer is going to tell us is that Sheriff Young made these statements to lessen the political impact on his friend Jim Gibbons, to intimidate the plaintiff from making her complaint, and to convince the public that there was nothing to this. Okay. If you look at the statements he made, though, they were factually accurate. There's no question that they were not. They were. Including telling the public that there's the nothing happened here, and you can go ahead and vote for Jim Gibbons. What he said was, I personally endorse Jim Gibbons. He didn't say nothing happened here. He specifically said what happened. He said she filed this, she withdrew this, that and that's what she said. And if she comes forward, we'll do a fair and complete investigation. But she withdrew the complaint. And without a complaining witness, how can we go forward? Well, he also made a statement, and I don't remember if it was to the reporter at the press conference, that this was all politically motivated. Well, I think you're referring to the so-called Hokey story. He said that in his deposition. He believed that. Well, no. He said something like that at the press conference, I believe, that, you know, based on the timing, it seems apparent that there were some political, you know, reasons for this. But I guess it did not chill the right. She held the press conference and brought out all the facts about this. Sheriff Young didn't. He never said a word factually about what happened, except she filed a complaint. She stopped it. We went forward with it. The only allegations that have come before you about actual involvement by Sheriff Young stem exclusively from the fact that he stole some videotape or was involved in it, which Judge Hunt didn't even consider, because as we pointed out in our brief, there's no evidence to support it. There's certainly no 56 evidence to support it. In fact, that's what was cited to you twice as the basis for it. You were looking. Do you have another? No. I would, you know, again, these are just allegations, but she claims your client was, in fact, the chief law enforcement officer of Clark County in Las Vegas, correct? He is. And he was in direct supervision of any investigation into these allegations. He's ultimately responsible for it. He was not personally involved in it. The buck stops at his desk. Absolutely. But there's in. He did not recuse himself from involvement in this investigation because of his association with Jim Gibbons. He did not. Okay. But. And one of the allegations in the complaint is that officers of Metro went out and intimidated witnesses to say stuff that wasn't true. That's one of their allegations. I don't know whether it's true or not, but that is one of the allegations, isn't it? I believe it is. But you saw the evidence, or Judge Hunt did, that came forward on that, and it doesn't substantiate a claim. Well, as to that conspiracy claim, your client's in it, and if there's a trial, and at the end of the trial they haven't proved these allegations up, you can move for a directed verdict, and if the judge denies that, you can bring it up and all of these arguments will be appropriate. I just don't see how they're appropriate in the context of interlocutory appeal. Thank you. I found the statement I was looking for. I guess it was just your client, Young, was quoted in a newspaper article saying, I believe in Jim Gibbons, I'm still voting for Jim Gibbons, and I urge every southern Nevadan to consider the political ramifications of this case and the timing. Does it put her in a bad light? Does it try to dissuade the people for anything other than a personal opinion? Does Bill Young lose his right to stand up and say what he is simply because he happens to be the sheriff of Clark County? What was not directly, and I agree with you, he's ultimately responsible, but he was not directly involved in the investigation. There's no evidence to that effect. Judge Hunt found no evidence to that effect. And counsel's only evidence is conjecture based on speculation. He was, Sheriff Young was out of town when these events occurred. He was in Boston until the 21st of October. And when he found out about it, who was the first person he called? Well, he returned a call, as I understand it, from Sig Rogich. The campaign advisor to Jim Gibbons. Exactly. Who had been Sheriff's Young campaign advisor in the past. There's no question. I think I have a minute left. I'll reserve that. All right. Good morning, Your Honors. I think this case could also have been entitled Chrissy Mazzeo versus the three most powerful people in the state of Nevada. Some people have said the sheriff of Clark County is the most powerful, or the governor is the most powerful, and Jim Gibbons was. Why don't we get to the facts. Tell us what you think we ought to do in connection with this interlocutory appeal on vitamin D. Well, the interlocutory appeal should be denied. I think the Court needs to remember that the judge did find under the joint action test that there was a conspiracy and a meeting of the minds to violate constitutional rights. In this case, to retaliate against Chrissy Mazzeo for the exercise of her First Amendment rights in order to protect Jim Gibbons' chance of being elected governor. A fair description of what he did was to say, I can't resolve this on summary judgment. Yes, because there's disputed issues of fact, as there always are. And as you know, when there is disputed issues of fact and all the inferences are taken in favor of the non-movement party, a decision is made. The district court identified three adverse actions in this case. Are there other adverse actions? Yes, there are. Okay. Now, if we look at a civil conspiracy, then all the actors are liable for all of the actors doing whatever they did in the to complete that conspiracy. Now, what we know, and especially this comes into play in the first statement that Young made in Boston to court reporters, that nothing happened, that this is highly intoxicated, individual, and it was all misunderstanding. Where did this information come from? It didn't come through police channels because the detectives and everyone says, I never heard about that. In fact, the detectives that went and when she withdrew the charges, she said, I don't want to be involved in the three-ring circus because who he is. So where did they get that information? This was pressure being put on Chrissie Masio by Penny Kewick, who was in touch with Rogich. Rogich had like 11 phone calls with Young that day. And as soon as they thought that Chrissie Masio had said the magic words that she was being pressured to say by Penny Kewick, that's when they came out with the statement. Roberts. Doesn't a person in Sheriff Young's position have his own First Amendment right to respond to statements made by the public? Well, at that point in time, yes, but at that point in time, he wasn't responding to statements by the public. He was responding to questions from the press. What do you know what happened here? That's before Chrissie Masio ever came forward. And in fact, her identity never should have come forward because based on all of the statements that she made to the police, she had stated a claim for a sexually motivated coercion, which is protected from release by Nevada law. But they released her identity anyway. And Sig Rogich also admitted that he called McCurdy, the deputy chief, directly as well. So he had the ability to not only call the sheriff numerous times a day, but also call the deputy chief sheriff. And so we have the ability to do that. So which case then establishes that Young's conduct was a constitutional violation? What case are you looking at to support that? Well, the initial case which would have been cited by the judge, which is the Ninth Circuit case, which states that if you have a constitutional violation and it's motivated and it's in retaliation, that's a First Amendment violation. I think the question is, what was the constitutional violation? That's step one, isn't it? Okay. What was the constitutional violation? The constitutional violation is retaliation for exercise of First Amendment rights, the First Amendment right being to make the police report. What did they do? Well, between all three of them and the conspiracy, they threatened the accuser, they altered witness testimonies, they attempted to intimidate witnesses. These are the allegations of the complaint. Yes. They – and we believe that we definitely can show that the tape that the LaQuinta N was modifying, and then there's the question of whether the parking garage tape was modified. They destroyed evidence. And now the first thing – Now, normally in qualified immunity cases, the first thing we look to is whether there was a constitutional violation. And then we look to whether it was clearly established law, Supreme Court or otherwise, that the actor shouldn't have done this. Well – What's your best case to say that it was clearly established that a law enforcement officer shouldn't do these things? We have cited a case very much on point out of the Ninth Circuit. They make fun of it because I put down so many points. You know, counsel, I don't care whether they make fun of it or not. What's your best case for the question? Belts Travel Services, Inc. v. International Air Transportation Associations on page 48 of my brief. And what was the constitutional violation there? Well, there a woman had complained that they had not done – I'm sorry, that was Blair, Blair v. Bethel School District. And – Blair is the case you're relying? Well, that's a Ninth Circuit case, 2010. The First Amendment prevents government officials from retaliating against individuals who are speaking out. And then we have Block v. Rebar out of the Sixth Circuit cited on page 50 of my brief. Here she was raped. They didn't like the job that the police were doing about it. They spoke out. And then in retaliation, the police released intimate details of the rape allegation. That's probably the most similar case that I was able to find on point. But, you know, the very first thing that – you know, they don't even have to come out to take a report. They have discretionary immunity. But once they do, they have an obligation to do an impartial investigation. And the very first thing that Bill Young did was a violation of NRS 199.520 by informing the suspect. Not only did he inform the suspect about the investigation, which certainly allowed Jim Gibbons to hide or otherwise dispose of her keys that he had stolen, which were later used to break into her truck. And then using the garage door opener to go into her house and move furniture around. He was keeping Rogich advised every step of the way of every single detail that they learned in violation of Nevada statute. So there was that. They reveal her identity contrary to law. And, you know, Judge – I mean, Bill Young's first words to the press after he talks to Rogich, after Rogich knows what Penny Cuick is threatening Chrissie Masiol that she doesn't say, after what Chrissie Masiol actually wrote down on the business card of the police officer after she had told him the grievance was still, that no crime occurred, misdemeanor – and then later on in the press conference he says misdemeanor battery at best. And then, of course, he says he believes in Jim Gibbons. And if you actually watch that entire video after David Roger, the district attorney, speaks, Bill Young gets back up and says, bring it on. You know, we have to consider all of the acts by all of the actors pursuant to the conspiracy that retaliated against her, which is a lot more than just speech. It's speech plus. Ms. Puick is one of the actors, I guess. Yes. Okay. And she's been dismissed. Yes. Can her actions be attributed to Mr. Young as a member of the conspiracy? We believe so. We believe we can make that case. She ultimately did file a complaint, correct? Who? Your client. Well, yeah. I mean, we filed a complaint. And it was investigated. And – Oh, you mean with the police department? Yes. Well, she filed the initial complaint. Then she was pressured to drop the case. Then she tells him she wants to drop the case because she doesn't want to be involved in a three-ring circus. But then – At the end of the day, she, in fact, files a complaint. Then she has the press conference. The complaint is processed. The complaint is filed. The complaint is processed. The law enforcement concludes – recommends no prosecution. County attorney, district attorney, which is the correct term? District attorney. The district attorney conducts his own investigation and declines to prosecute. Is that correct? That's correct. But I think I should point out that our ability to go after the district attorney was greatly impeded by a lie which was told to the judge magistrate by the chief deputy district attorney. Is this in your complaint? No, it's – Is this in the record? No, it's not. Then don't talk about it. All right. If it's not in the record, don't talk about it. Can I go back to Judge Murguia's question about Penny Puick? One of the allegations is that – that Rogich, as part of a conspiracy involving Young, persuaded her to lie about the incident in an affidavit. Now, she has been dismissed from this case. That's correct. We had a separate agreement with them that's confidential. Uh-huh. We ended up dismissing her from the case. But let me get back to that. But her state – but the statement and the allegations concerning what she did are still – can still be used in this case against the rest of the conspirators? It can. And when getting back to that first statement, Rogich brought her in, already had a type statement prepared for her to sign. She didn't want to sign it because it said certain things that she knew could be disproved, such as that Gibbons was not intoxicated. Even though she has paralegal training, her signature is technically not under oath like the other statements were after they typed it back up. But yes, she was being presented here, signed this, you know, and not only are you saying that there was no flirtatious conduct at the table, but we're also asking you to say that Jim Gibbons was not intoxicated. The district court found that Sheriff Young lied when he said that Ms. Mazzello told the police that it was a misunderstanding. And apparently, according to Mazzello's deposition, Mr. Young was not lying. What do we do about that error by the district court? Well, she's under the impression at her deposition, which she did terribly, well, at any rate. She said, yes, I recall calling the police and saying that, but then when we did everything we could to trace how that could have possibly gotten to Young, we came up completely empty. Young says he got his information from McCurley. McCurley denies that, and McCurley says that it was Young's choice of words to use misunderstanding. The question before you is what do we do with the fact that the judge said, not a misunderstanding, she said it was in her deposition. What do we do with that? Well, she didn't say it was a misunderstanding in her deposition. She said that that's what she was being pressured to say, and that's what she recalls calling Metro to say, but didn't speak to any particular person, and whoever that person possibly was who possibly got that, and I kind of doubt it, certainly never relayed that information at all to Young. Young got his information from Rogich, and Rogich could have only known that information because he knew what Penny Piewik was pressuring Chrissy Mazzello to say. When Chrissy Mazzello first said it was a three-ring circus and told that to Piewik, Piewik just went berserk. No, no, no. You've got to call them back. You've got to say alcohol was involved. You've got to say it was a misunderstanding. Sotomayor, I'm not sure you answered my question, but thank you for your effort. Assuming that you have evidence that the security footage was doctored, and I think that's one of the claims, what evidence links this to Mr. Sheriff Young? It's in the record. What evidence links this to him? Well, the one piece of evidence is that the investigating detectives knew and admitted in their deposition that the same cat had been seen on two different cameras at two different times, approximately 2 minutes, 11 seconds apart, made no mention of that at all in the report. They were in the room where the two recorders were located. They claimed that they would have routinely checked those sorts of times. I'm listening for a connection to the sheriff. You're going to get there? I can't give you a direct connection to the sheriff. I can give you a direct connection to the investigating officers. And what's the link between them and the sheriff, other than the fact they worked for him? Well, they wouldn't normally have been assigned to this sort of case, they admitted. Okay. All right. Thank you. I think I have one minute left, and I'll give me enough time to just briefly make a few comments, if I could, on what was just said. I think the answer to the question that never got addressed was there's no link to the sheriff. One, counsel cites to you and tells you that Ms. Mazzio's name was released inappropriately. It's not. If you look at the citations in our brief, you'll see that sexual assault requires certain things, neither of which were appropriate here. Counsel's citation to the NRS has to do with registration after being convicted of a sexual assault, not with the defining of a sexual assault. So what Bill Young released was totally appropriate. Let me ask you a question. Doesn't the case of Kozolter indicate that a pattern of harassment or intimidation can be an adverse action, and why wasn't that present here? I believe that that absolutely, I agree with the Court on that. I would say to you, though, you have to look at what Bill Young did. It's very clear. The Court told you what he did. Remember, Judge Hunt gave no credence whatsoever. He didn't even talk about the missing tapes and all that and Bill Young's connection to it. Why? I think you know why. You heard it here today. It makes no sense. But there is nothing that he did except exercise his First Amendment rights. He had a right to respond. And what we're saying is take every fact that they say is true, and Judge Hunt should have granted the summary judgment because there's no constitutional violation. And on qualified immunity, the first prong, well, it used to be, I think it still is, a constitutional violation. There isn't one here. So that's why we're asking that it be reversed. It would make great sense if Congress had allowed someone who lost a summary judgment motion to appeal it on an interlocutory basis. They have not. I think I'm still in the eighth inning and you're still at the first. Thank you very much for your argument. Thank you, Mr. Cameron. Thank you both for your oral argument here today. The case is now submitted.
judges: Schroeder, Hawkins, Murguia